UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
JOSEPH SESSIN,                                  :        Case. No. 1:15-CV-01691
                                                :
          Plaintiff,                            :
                                                :
     v.                                         :        OPINION & ORDER
                                                :        [Resolving Doc. 20]
THISTLEDOWN RACETACK, LLC, et al.,              :
                                                :
          Defendants.                           :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On August 24, 2015, Plaintiff Joseph Sessin filed a complaint against Defendants Thistledown Racetrack, LLC, Thistledown Management, LLC, and Lynn Shoda ("Thistledown"). He alleges disability discrimination, hostile work environment, constructive discharge, retaliation, and intentional infliction of emotional distress

Defendants move for summary judgment.[1] For the following reasons, the Court **DENIES** Defendants' motion for summary judgment as to the disability discrimination claims and **GRANTS** Defendants' motion for summary judgment as to the retaliation claims, the hostile work environment claims, the constructive discharge claims and the intentional infliction of emotional distress claims.

## I.    Factual Background

Thistledown is a "racino" located in Ohio which offers a combination of live horse racing, video lottery terminals, dining and nightlife options. Plaintiff Sessin began working at Thistledown as an Accounting Supervisor in February 2013.[2] Director of Finance Lynn Shoda interviewed and hired Sessin. Shortly after Sessin started his employment at Thistledown,

---

[1] Doc. 20.
[2] Doc. 20-2 at 93-97.

Case No.15-cv-01691
Gwin, J.

Rebecca Ivey joined Thistledown as another Accounting Supervisor.[3] Ivey had previously worked in the accounting department at Horseshoe Casino and was finishing her work for that casino before joining Thistledown.[4]

Plaintiff Sessin spent the first months of his employment preparing Thistledown for its grand opening.[5]

For the last 25 years, Sessin has had Meniere's disease. As a result of the hearing loss associated with Meniere's disease, Sessin wears visible hearing aids on both ears.[6] Sessin never disclosed to anyone at Thistledown that he had Meniere's disease, and he never missed a day of work.[7]

Finance Director Shoda testified that she did not notice Sessin's hearing aids until someone pointed them out to her.[8] Plaintiff testified that during a staff meeting in late April or early May in Shoda's office, Shoda yelled to him, "I can never tell if you are hearing me."[9] This comment offended Sessin. During this meeting, Sessin indicated that if he does have trouble hearing others speak, he can also read lips.[10]

Around the same time, Plaintiff says Shoda chose Ivey to attend a Las Vegas training instead of Sessin.[11] Finance Director Shoda says the decision of whether to send Plaintiff to the training was made by someone in Caesar's Las Vegas corporate headquarters.[12] Thistledown Racino is a Caesar's casino.[13] Sessin says he had planned to attend the Las Vegas training

---

[3] *Id*. at 187.
[4] Doc. 20-3 at 50.
[5] Doc. 20-2 at 152.
[6] Doc. 22-1.
[7] *Id*. at 138.
[8] Doc. 24-1 at 88.
[9] Doc. 25-1 at 49.
[10] Doc. 22-1 at 11.
[11] *Id*. at ¶ 15.
[12] Doc. 24-3 at 37.
[13] Doc. 24-1 at 226.

Case No.15-cv-01691
Gwin, J.

seminar with his team to get more gaming experience to apply to his job.[14] Ivey had attended this training already, and testified that someone at Caesar's corporate decided that she should go instead of Sessin.[15] Defendants say that the training was for Accounting Clerks, not for Accounting Supervisors like Plaintiff.[16]

Plaintiff Sessin says that in late April or early May 2013, Finance Director Shoda effectively demoted Sessin and Ivey replaced him as the sole Accounting Supervisor.[17] Ivey testified that Shoda told her that Ivey would transition to become the primary supervisor of the entire accounting team.[18] Plaintiff Sessin also points to Shoda's handwritten notes that state, "Joe- transitioned out of supervisor role. Focus is now solely invoices."[19]

On May 29, 2013, Plaintiff Sessin met with Rick Skinner, Thistledown's General Manager and Shoda's immediate supervisor, to discuss Finance Director Shoda's comment from the staff meeting.[20] Skinner told Sessin to let him know if anything similar were to happen.[21]

On May 30, 2013, Sessin received his 90-day Performance Review in Shoda's office with Shoda and Human Resources Manager TreVina Johnson present.[22] Plaintiff Sessin says Shoda made discriminatory comments during the Performance Review. During that meeting, Shoda asked Plaintiff, "if you read lips, why are you not looking at me?"[23]

Plaintiff did not complain to anyone at Thistledown of the comment that day. On June 4th, 2013, Sessin resigned by handing in a resignation letter.[24] In the letter, Plaintiff wrote that

---

[14] Doc. 22-1 at ¶ 13.
[15] Doc. 24-3 at 36-37.
[16] *Id*. at 35-36.
[17] Doc. 22-1 at ¶19.
[18] Doc. 24-3 at 21-22.
[19] Doc. 22-6.
[20] Doc. 25-1 at 223.
[21] *Id*. at 227.
[22] *Id*. at 215.
[23] Doc. 24-1 at 119-21.
[24] Doc. 25-1 Ex. 3.

-3-

Case No.15-cv-01691
Gwin, J.

his "disability has never impacted my ability to perform the essential functions of my job."[25] He also wrote that Shoda created a "hostile and offensive work environment" and that "although my feelings never impacted the method and manner in which I performed my job, those feelings have reached a level in which I do not feel I can continue to perform my duties within the environment which has been created by Ms. Shoda."[26]

*Procedural History*

Plaintiff sued Defendants, asserting nine causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act and Amendments Act; (2) hostile work environment based on disability discrimination in violation of the Americans with Disabilities Act and Amendments Act; (3) constructive discharge based on disability discrimination in violation of the Americans with Disabilities Act and Amendments Act; (4) disability discrimination in violation of Ohio Revised Code §4112.01; (5) hostile work environment based on disability discrimination in violation of O. R.C. §4112.01; (6) constructive discharge based on disability discrimination in violation of O. R.C. §4112.01; (7) retaliation in violation of the Americans with Disabilities Act and Amendments Act; (8) retaliation in violation of O. R.C. §4112.01; and (9) intentional infliction of emotional distress.[27]

Defendants move for summary judgment on all claims.[28]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[29] The moving party must first demonstrate that there is an absence of a genuine dispute as

---

[25] *Id.*
[26] *Id.*
[27] Doc. 1.
[28] Doc. 20.
[29] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

-4-

Case No.15-cv-01691
Gwin, J.

to a material fact entitling it to judgment.[30] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[31] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[32] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[33]

### III. Discussion

#### A. Disability Discrimination

Plaintiff brings a disability discrimination claim under the Americans with Disabilities Act (ADA) and Ohio Revised Code Chapter 4112. According to the Sixth Circuit, disability discrimination claims under the ADA and O. R.C. § 4112.02 can both be analyzed solely under the ADA.[34] Thus, the Court will analyze Plaintiff's disability discrimination claims under both federal and state law together.

A plaintiff may establish a prima facie case of handicap discrimination under the ADA by showing that: 1) he is a disabled person within the meaning of the Act; 2) he is otherwise qualified to perform the essential functions of the position with or without reasonable accommodation; 3) he suffered an adverse employment decision due to his disability; and 4) the employer knew or had reason to know of his disability.[35]

Defendants only challenge the third prong of the analysis, arguing that Plaintiff Sessin did not suffer an adverse employment action.[36]

---

[30] See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31] See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[32] *Id.* at 586.
[33] *Killion*, 761 F.3d at 580. (internal citation omitted).
[34] *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (collecting citations).
[35] *Sullivan v. RiverValley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999).
[36] Defendants note that they are not waiving their argument as to Plaintiff's disability and are assuming only for summary judgment purposes that he can establish that is disabled under the ADAAA. Doc. 23 at n 1.

-5-

Case No.15-cv-01691
Gwin, J.

"In order to make a prima facie claim of discrimination, the plaintiff must also show that [he] suffered an adverse employment action due to [his] disability."[37] Such an action is one that creates a "materially adverse change in the terms or conditions . . . of employment because of [the] employer's conduct."[38] A materially adverse change includes, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."[39]

Although a close call, this Court finds that there is a genuine issue of material fact as to whether Plaintiff Sessin suffered an adverse employment action. There is a question of fact as to whether Sessin experienced significantly diminished responsibilities within the accounting department.

Defendants say that Plaintiff remained an Accounting Supervisor from the time he was hired to the time he resigned. Sessin's title and pay did not change. However, Finance Director Shoda's own handwritten notes indicate that Sessin was "transitioned out of supervisor role."[40] Her notes further indicated that Sessin's "focus is now solely invoices."[41]

Moreover, co-worker Ivey testified that Shoda told her that Ivey would be transitioning to becoming the primary supervisor of the entire team.[42] Although Ivey testified that she considered Sessin to still be on the same level as her after the change, she admitted that Sessin was no longer supervising people after the change.[43] Plaintiff Sessin says that he lost his supervisor position and had his "job responsibilities significantly diminished," explaining that "instead of being the

---

[37] *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir. 2008).
[38] *Id*.
[39] *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 885-86 (6th Cir. 1996).
[40] Doc. 22-6.
[41] *Id*.
[42] Doc. 24-3 at 22.
[43] *Id*. at 23.

-6-

Case No.15-cv-01691
Gwin, J.

supervisor of my team of employees, including the employees I had hired, I was now working alongside them, taking direction from Ivey."[44]

Defendants say that *Broska v. Henderson* holds that the "mere shifting of such job responsibilities is insufficient to rise to the level of an adverse employment action."[45] This Court disagrees. In *Broska*, the only evidence the *Broska* Plaintiff gave of adverse employment action based on a change in work duties that lowered the amount of overtime he could work was a "terse statement in his affidavit" that his employer diminished his "work responsibilities in the sorting of my business mail."[46] The Sixth Circuit found that evidence insufficient to withstand defendant's summary judgment motion. Here, in addition to his own affidavit, Plaintiff offers the written notes of Finance Director Shoda indicating that Plaintiff was transitioned out of the supervisor role as well as Ivey's testimony where she acknowledged Sessin was no longer supervising.

Defendants further cite to the Sixth Circuit's holding in *Momah v. Dominguez* that an "employee's subjective impressions as to the desirability of one position over another are not relevant" in determining whether the employee suffered an adverse employment action.[47] This citation is not on point. In this case, Sessin provided evidence of more than just his own subjective impressions—namely, Shoda's note and Ivey's deposition.

Defendants briefly argue that even if Sessin's demotion were an adverse employment action, Sessin is unable to establish the "but-for" causation required to link the adverse employment action to his disability. However, "because the moving party must "show [ ] that there is no genuine dispute as to any material fact" under Rule 56(a), an employer acting as the

---

[44] Doc. 22-1 at ¶ 21.
[45] *Broska v. Henderson*, 70 F. App'x 262 (6th Cir. 2003).
[46] *Id*. at 268.
[47] *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007).

-7-

Case No.15-cv-01691
Gwin, J.

moving party must show that no reasonable juror could find that the employee would have been retained in the absence of his disability."[48] Here, Defendants offer no arguments or evidence to show that Ivey, and not Sessin, would be given supervisory responsibilities regardless of his disability. Defendants focus their arguments solely on Sessin's demotion not qualifying as an adverse employment action.

Plaintiff Sessin, on the other hand, argues that his disability was the reason for the adverse employment action given Shoda's comments about his hearing. Thus, there exists an issue of material fact as to the causation behind the adverse employment action suffered by Sessin.

It is best left for a jury to decide whether Sessin would have been demoted in the absence of his disability. This Court **DENIES** Defendants' motion for summary judgment on Plaintiff's disability discrimination claims.

*B. Hostile Work Environment*

Federal and state claims for hostile work environment are evaluated under the same standards.[49] Thus, this Court will analyze Plaintiff's federal and state hostile work environment claims together.

To establish a hostile work environment claim based on disability, a plaintiff must show that (1) he was disabled; (2) he was subjected to unwanted harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance, and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures.[50]

---

[48] *Saley v. Caney Fork, LLC*, 886 F. Supp. 2d 837, 853 (M.D. Tenn. 2012).
[49] *See Heyden v. Morton Salt, Inc.*, No. 5:13CV1706, 2015 WL 1383654, at *10 (N.D. Ohio Mar. 25, 2015).
[50] *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2002).

-8-

Case No.15-cv-01691
Gwin, J.

A hostile work environment claim can survive only where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[51] This Court must consider all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[52] Offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment."[53]

Here, the parties are stipulating for the purposes of summary judgment that Plaintiff Sessin is disabled. As for the harassment, Plaintiff alleges three factors to support his hostile work environment claim: 1) Shoda's two comments regarding whether Plaintiff could hear her 2) Plaintiff not attending the Las Vegas training and 3) Ivey assuming supervisory duties and Plaintiff's alleged demotion.

This Court believes that a reasonable jury could not find the environment faced by Plaintiff at Thistledown objectively hostile. First, the two statements made by Shoda do not rise to the level of "severe and pervasive." Plaintiff Sessin acknowledged that Shoda's statements could serve the non-discriminatory purpose of making sure that he heard Shoda.[54] Further, Plaintiff wrote in his resignation letter that Shoda's comments "never impacted the method and manner in which I performed my job."[55] Thus, Plaintiff Sessin admits that Shoda's comments did not unreasonably interfere with his work.

---

[51] *Harris v. Forklift Sys.* 510 U.S. 17, 21 (1993).
[52] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, (2002) (internal quotation marks and citation omitted).
[53] *Hafford v. Seidner*, 183 F.3d 506, 512–513 (6th Cir. 1999).
[54] Doc. 25-1 at 53.
[55] *Id*. at 214-215, Ex. 3.

Case No.15-cv-01691
Gwin, J.

As far as the Las Vegas training, the record indicates that Shoda did not make the decision not to send Sessin—someone at Caesar's Corporate did.[56] No evidence shows that the Caesar Corporate deciders knew about Sessin's hearing disabilities. Further, the training was intended for the Clerks.[57] Thus, not going to the training did not unreasonably interfere with Sessin's work performance and does not constitute evidence of a hostile work environment.

Finally, Sessin points to his alleged change in his job responsibilities as evidence of hostile work environment. Although this Court finds that the change in job responsibilities constitutes an adverse employment action, it does not result in a hostile work environment. The disability discrimination and hostile work environment claims are distinct, and the change in job responsibilities does not meet the standard for a hostile work environment. The existence of an adverse employment action does show that the workplace was permeated with "intimidation, ridicule, and insult." This Court finds that Plaintiff loses on the hostile work environment claims and **GRANTS** summary judgment to Defendants on these claims.

*C. Retaliation*

Ohio Revised Code § 4112.02(I) and Title VII prohibit retaliatory actions against employees who oppose, report, or participate in investigations involving conduct that allegedly violates Ohio Revised Code §4112.01(I) or Title VII.[58]

The burden for establishing a retaliation claim under Ohio Revised Code § 4112 is identical to the burden for establishing retaliation under the federal employment laws.[59] In order to establish a prima facie case of retaliation, Plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3)

---

[56] Doc. 24-3 at 36-37.
[57] *Id.*
[58] *See* 42 U.S.C. § 2000e-3(a).
[59] *See* Bukta v. J.C. Penney Co., Inc., 359 F. Supp.2d at 671, n.15 (citing *Moorer v. Copley Twp.*, 98 F. Supp. 2d 838 (N.D. Ohio 2000) (*Chandler v. Empire Chem., Inc.*, 650 N.E.2d 950 (Ohio Ct. App. 1994).

-10-

Case No.15-cv-01691
Gwin, J.

the Defendants thereafter took an adverse employment action to Plaintiff; and (4) there was a causal connection between Plaintiff's protected activity and the adverse employment action by Defendants.[60]

Here, Plaintiff Sessin says that he engaged in protected activity when on May 29, 2013, he told Skinner about Shoda's comments from the first meeting. Defendants agree that if this happened, it would be protected activity. But Plaintiff loses this claim because he did not suffer an adverse employment action *after* speaking to Skinner. Sessin's effective demotion occurred in late April or early May 2013, *before* he spoke to Skinner.[61]

Sessin argues that the alleged Shoda comments to him at his 90-day review meeting constitute an adverse employment action. This is not the case. As our analysis above indicates, an adverse employment action is a "materially adverse change in the terms and conditions of [the plaintiff's] employment." Isolated and potentially offensive comments do not constitute a materially adverse change in the terms and conditions of employment and thus do not result in an adverse employment action here.

Plaintiff Sessin fails to establish a prima facie case of retaliation. This Court **GRANTS** summary judgment to Defendants on the retaliation claims.

*D. Constructive Discharge*

The Supreme Court has held, "under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions

---

[60] *See* McElroy v. Philips Med. Sys. N. Am., Inc., 127 F. App'x 161 (6th Cir. 2005).
[61] Doc. 22-1 at 19.

-11-

Case No.15-cv-01691
Gwin, J.

become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Ohio courts ask the same question.[62]

The Sixth Circuit has held, "A constructive discharge claim "depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee."[63] To establish a constructive discharge, the plaintiff must prove both that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit."[64] The Sixth Circuit has recommended factors to consider with regard to a Title VII constructive discharge claim:

> Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.[65]

Here, only two of the factors potentially apply to Plaintiff Sessin's situation: demotion and reduction in job responsibilities. As discussed above, Plaintiff Sessin did not suffer a reduction in salary nor did he put forth sufficient evidence of "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation" or "offers of early retirement or continued employment on terms less favorable than the employee's former status."

Plaintiff Sessin also does not offer any direct evidence that he was reassigned to menial or degrading work although he testifies, "instead of being the supervisor of my team of

---

[62] *Mauzy v. Kelly Servs., Inc.,* 664 N.E.2d 1272, 1280-81 (Ohio 1996).
[63] *Smith v. Henderson,* 376 F.3d 529, 533 (6th Cir. 2004).
[64] *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001).
[65] *Id*. (citation omitted).

-12-

Case No.15-cv-01691
Gwin, J.

employees, including the employees I had hired, I was now working alongside of them, taking direction from Ivey."[66]

Shoda testified that she hired both Ivey and Sessin during a time when Thistledown was preparing to open the racino. Shoda testified that "once the operation was stabilized . . . the supervisors would be responsible for the same activities completed by their teams."[67]

Shoda further says that she told Sessin when he came on there was a "current state and we were building towards a future state."[68] Shoda explained that when Sessin joined Thistledown, "the focus was on building the accounting operation, the business processes to support the audit…" Shoda says she laid out the job responsibility expectations in regular meeting with Sessin and Ivey.[69]

Both Shoda and Ivey testified that after Sessin's alleged role transition, he did not report to Ivey.[70] Shoda maintains that all employees had their role and responsibilities modified as Thistledown began operating.[71]

Given this context and the Sixth Circuit factors, a reasonable person would not find Plaintiff's alleged changes in job responsibilities and demotion to be intolerable working conditions. And Plaintiff Sessin has put forth no evidence that Defendants deliberately imposed the changes in order to force him to quit. If anything, the evidence shows that Defendants considered Plaintiff Sessin's position to necessitate changes in responsibilities given the particular juncture the company was at.

---

[66] Doc. 22-1 at ¶ 21.
[67] Doc. 24-1 at 40.
[68] *Id*. at 53.
[69] *Id*. at 41.
[70] Doc. 24-1 at 95; Doc. 24-3 at 23.
[71] Doc. 24-1 at 96.

Case No.15-cv-01691
Gwin, J.

Because Plaintiff is unable to meet the objective or subjective prongs of the constructive discharge inquiry, Plaintiff's constructive discharge claims lose. This Court GRANTS summary judgment to Defendants on the constructive claims.

*E. Intentional Infliction of Emotional Distress*

Plaintiff also brings an Ohio state law claim against Defendants for intentional infliction of emotional distress. To recover on an intentional infliction of emotional distress claim, Plaintiff must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."[72]

"When claiming an intentional infliction of mental distress, only that conduct which exceeds 'all possible bounds of decency' is actionable."[73] For the conduct to qualify as sufficiently extreme and outrageous, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"[74]

The facts in this case could not arouse this level of resentment in a rational trier of fact. Defendants' alleged discriminatory conduct—two isolated comments and an effective demotion—does not constitute conduct "so outrageous in character and so extreme in degree, as

---

[72] *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio App. Ct. 1983) *(*quoting Restatement (Second) Torts § 46 cmts. d, j (1965)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).
[73] *Davis v. Billow Co. Falls Chapel*, 610 N.E.2d 1024, 1026 (Ohio 1991).
[74] *Yeager v. Local Union 20, Teamsters*, 453 N.E.2d 666, 671 (Ohio 1983) *(*quoting Restatement (Second) Torts § 46, cmt. d (1965)).

-14-

Case No.15-cv-01691
Gwin, J.

to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[75]

The Sixth Circuit has warned that every discrimination claim should not simultaneously become a cause of action for the intentional infliction of emotional distress.[76] Here, Plaintiff Sessin testifies that he suffered depression, anxiety, sleeplessness, loss of appetite, and sadness. Ohio Courts have held, "Summary judgment is appropriate when the plaintiff presents no testimony from experts or third parties as to the emotional distress suffered and where the plaintiff does not seek medical or psychological treatment for the alleged injuries."[77] Plaintiff Sessin has not put forth any such evidence. His intentional infliction of emotional distress claim fails. This Court **GRANTS** summary judgment to Defendants as to Plaintiff's Intentional Infliction of Emotional Distress claim.

### IV. Conclusion

For the reasons above, this Court **GRANTS** Defendants' motion for summary judgment as to the hostile work environment, retaliation, constructive discharge and intentional infliction of emotional distress claims. This Court **DENIES** Defendants' motion for summary judgment as to the disability discrimination claims.

IT IS SO ORDERED.

Dated: May 4, 2016               *s/        James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE

---

[75] *Yeager,* 453 N.E.2d 666 at 671.
[76] *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).
[77] *Crable v. Nestle USA, Inc.*, No. 86746, 2006 WL 1555405, at *9 (Ohio Ct. App. June 8, 2006).